Mr. Justice Gantt
delivered the opinion of the court:
The clause in the will of Henry ' Laurens, under which the devisee claims, is in the following words :
“ I give and devise to my daughter, Mrs. Ramsay, and to Dr. Ramsay, all my lands at Long Cane, in the district of Ninety-Six, containing in the whole about six thousand acres, together with all my lots in the village of Hamstead, and all my marsh in the front thereof, (which landsT have estimated at one thousand seven hundred and fifty pounds, although in my conscience, I believe them to be worth more than double that sum,) to hold the same to them and their heirs in trust, and to and for the use and behoof of my grand daughter, Frances Eleanor Laurens, *253 ■during her life, and in case she should leave a child, or children, or grand child, or grand children, living at her death, then I devise the same to such child, or grand child, if only one, in fee simple,’but if more than one, then I devise the same to them, share and share alike, (the grand children representing the parent,) and to their heirs forever. But in case she should die without leaving a child, or children, or grand child, then I devise the said lands to my son Henry and his heirs for ever.
Another clause in the will of the testator, is in these words :
I constitute and appoint Dr. Ramsay, and the wife of Dr. Ramsay, my dear daughter Martha Laurens Ramsay, guardians and trustees of my grand daughter, Jinlilshe shall be of age to x-eeeive her estate.”
The will bears dale on the.first day of Novembei-, 1792, and was proved on the 7th January, 17QD.
The question presented for the consideration of the court is, whether Frances Eleanor Laurens, the devisee, took the legal estate in the lands devised, or whether the same, by the will vested in the trustees. The solution of this question will depend upon the construction which must be put upon the Statute of Uses, (%’i Henry 8th, C. 10,) and made of foi-ce in this state. ■
It would be altogether unavailing to enter into a discussion of the origin ofxxses, the inroad which was made by their introduction into the simplicity of the common law, and the ill effects which were pj'oduced by dividing the possessions from the use. The Statute of Heni’y the 8th, after reciting the various inconveniences occasioned by the introduction of uses, enacts, “ that when any person shall be seized of lands, &c. to the use, confidence, or trust of any other person or body politic, the person, &c. entitled to the use in fee simple, fee tail, for life or years, or otherwise, shall, from thenceforth, stand and be seized or possessed of the land, &c. of and in the like estates as they have in the use, trust, or confidence, and that the es» Jate of the person so seized to uses, shall be deemed to b§ *254 in hi-n or them that liare Ibe use, ,in such quality, niaiic, form, and condición as they had before in the use.” This Salute, Judge Bluckslone says, conveys the possession to the use, and transfers the use into possession \ ■hereby making the ceslui que use complete owner of the hmds and tenements, as well at'law as inequity. (3 Black. Com. 332.) And Lord Bacon, in bis reading on i.hk Siatute says, that the possession thus transferred is not a mere seisin or possession in law, but an actusl seisin rad possession in fact ; not a mere title to enter upon the land, butiro actual estate. (See Cro. Elis. AG.)
The strict construction which was put upon this statute, occasioned a distinction to be drawn between such uses as were executed by the Statute, and such as were not so executed. Chancery took cognizance of the latter under the mame, of trusts.
There were three direct modes of creating such a trust as would prevent the use from being executed.
The first was where a use was limited on a use. íhe common law judges in their construction of the statute held, that the second limitation to use was a nullity, the '.yards &£ the statute being “ where any person is seized of tinjr lands and tenements.”
But no such difficulty is presented in the clause of the v/ill under consideration. In it there is no limitation of a use upon a use, but such an estate is conveyed as falls strictly within the express provision of the statute, and such as would at all times, and in every court after this statute, have passed the legal estate to the cestui que use.
A second mode of creating a trust, not executed by the statute was, where the feoffees to a use were directed to receive the profits and pay them over to the person intended to be benefitted. In such case, as the cestui que use could receive nothing but through the hands of the trustees, the legal estate was considered as being in them.
But where the devise was to permit the cestui que use to receive the rents and profits, there the legal estate would vest' in him by the statute. The case of Broughton *255 against Langley, (l Salk. 678,) illustrates 1ms position. Lands were devised to trustees and their heirs, to the intent and purpose to permit A. to receive the rents- and profits for his life. Lord Chief Justice Holt said, that this would have been a plain trust at common law, and that what at common law was a trust of a freehold or inheritance, is executed by the statute which mentions the word trust as well as use. In the case of Chapman vs. Blissett, (Forrest, 145,) where one of the questions was, whether the trustees took the legal estate. Lord Hardwicke says, “ If an estate he limited to A. and his heirs in trust for B. and his heirs, then it is executed in B. and hi., heirs. But where particular things are lo be done by the trustees, it is necessary that the estate should remain iv. them, so long at least as those particular purposes required it. (See 1 Cruise’s Digest, 4G3.J
Let us apply these instances to the ease under consideration.
Is there any thing in tho structure of the clause in the will of Henry Laurens evinsive of an intent on the pari of the testator, that the legal estate should remain in the trustees ? Not one word is said about their receiving the rents arid profits, and paying thorn over to the cestui quo use j no debts are to be paid out of tins fund ; no purpose whatever is expressed, whereby it might he inferred that the legal estate was intended to remain in the trustees. They are simply required to hold to them and their heirs to the useofthe devisee. The statute therefore, according to the opinions both of Lord Holt and Lord Hardwicks, executes the possession to the use, and gi ves the legal estate to the cestui que use.
The third direct mode of creating a trust, not executed by the statute is, where a term for years is granted to one to the use or in trust for another. The legal estate in such case will not be executed by the statute in the cestui que use. The reason assigned is, that no one can he said according to technical rule, to bo seized of a term — seisen vi termini, importing a freehold, and the words of the *256 statute being — •“ Whan any parson is seized to the use of smother’s.” But lilis branch of the law has no relation to the f'i.v.ine' of the will under consideration, the devise being of a freehold nature.
Thero are other cases of trust estates arising from the nature of the transaction, and the evident intent of parties. The ¡'.Ulule of frauds and perjuries has reference to such. It enacts that all declarations and creations of trusts of lands or hereditaments must be in writing ; but excepts from the operation of the act, all such convej’ances where trusts and confidences shall arise or result by implication of law. (See S. 20, of the Statute.)
It would be a perversion of every rule of construction to f-.iy, that tb- iegal estate was intended to vest in the trustees by the clause in the will of Henry Laurens, and in direct opposition to the authorities on the subject, both in law and equity, and would be making the statute of uses to all intents and purposes a dead letter. The will throughout is drawn with skill and ability ; the utmost precision is observed by the testator in the structure of each clause, and in the disposition of his estate. Technical and apt 'words are used to denote his meaning. If the testator therefore had intended that the legal estate should remain in the trustees, he would have afforded a clear signification of such intention, by pointing out the reasons why he had resolved on having it so fixed. I think therefore the conclusion is inevitable that he had no such intention — . that he well understood the legal effect and operation of the words used by him, and that his intent would be violated were a different interpretation to be put upon the clause than the one I have adopted.
One of the counsel for the plaintiff, in the argument of this question, contend that as the statute of uses preceded the statute of wills, it could not extend to estates created, under a power that had no existance until the latter statute imparted it. In confutation of this idea, I refer to Mr,, jPowell’s Treaties on Devises, pages 271-2 — 3-4 $ 5. 2 L. Raymond, 875. 12 East. 455. 3 Eos. %■ Puller$ 175.
Bowie, for the motion.
Moble fy Wardlaw, contra.
Independent of the view thus taken of the law arising upon the devising clause in this will, in which I am supported by a majority of the court, I confess that I fool myself strongly supported in the correctness of my opinion by the last quoted clause in the will. The tesmtor there constitutes and appoints Doctor Ramsay and. his wife guardians and trustees of his grand daughter, until she shall be of age to receive her estate.
These expressions, to my mind, are full of meaning: He had, in a previous clause constituted them trustees,respecting the lands devised : In this clause they are constituted guardians of her person — both of which, it would seem, the testator intended should cease on her arriving of age, at which time he declares, she was to receive her estate. As my brethren, however, enter:,..ia doubts as to this clause and rather incline against the construction I am disposed to put upon it, I deem it unnecessary to dwell 'upon it.
The motion to set aside the nonsuit is refused.